UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GLORIA ANTHONY-OLIVER,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 23-cv-05209-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 31 |

# INTRODUCTION

The plaintiff, who is representing herself, sued her former employer, the City and County of San Francisco (CCSF), and M'Kia McCright, a CCSF employee, claiming retaliation and discrimination based on her race and her advocacy for children of color in San Francisco, presumably in violation of Title VII of the Civil Rights Act of 1964 and California's Fair Employment and Housing Act (FEHA). The CCSF moved to dismiss (1) for failure to exhaust administrative remedies with the EEOC or California's Civil Rights Department (CRD) and (2) because individuals are not personally liable under the acts. The court can decide the motion without oral argument, Civil L. R. 7-1(b), and dismisses on these grounds.

# STATEMENT

In her initial complaint, the plaintiff claimed constructive discharge and wrongful denial of medical leave in violation of Title VII and then, in an amended complaint, intentional infliction of

emotional distress (and not any other employment-related claims).[1] The CCSF moved to dismiss the IIED claim for failure to timely file a government claim, which is a prerequisite to the filing of the claim. Cal. Gov't Code § 905. The CCSF also moved to dismiss the claim against it for punitive damages because it is not liable for exemplary damages. Cal. Gov't Code § 818.[2] The plaintiff said that she did not intend to raise an IIED claim and did not oppose the motion to dismiss the punitive-damages claim.[3] The court then dismissed the last complaint with leave to amend to reassert the federal claims that the plaintiff intended to assert.[4]

In her amended complaint, the plaintiff described her career and the alleged retaliation.

She began her career in August 1995 as a protective services worker, carrying sixty-five cases starting on day one. Her biggest challenge was meeting the special needs of thirty of her sixty-five clients. She increased her knowledge through training. She had a cardiac event in 2002 and "months later" was transferred involuntarily to the Child Abuse Hotline. In 2006, she landed her dream job, Educational Liaison to hundreds of children who needed advocacy. She was vocal about how the children needed more support than she could give, and she became unpopular with management, particularly the deputy director. The CCSF twice moved her involuntarily to different positions, one with Dan Phillips and one with Carole Sentell-Bassett. "She stood up for her rights as a Black employee and for the children she served (majority Black children)." She was moved back to the CFT/education unit and retired in November 2021. She was not invited to important meetings with the Foster Youth Services team and HAS management. She was told that when she left the agency, her position would be removed (and it was).[5]

---

[1] Comp. – ECF No. 1; Am. Compl. – ECF No. 8. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 17.

[3] Opp'n – ECF No. 26.

[4] *Id.* at 5 (asking for leave to amend to provide the clarity that the CCSF seeks); Order – ECF No. 29.

[5] Second Amended Complaint (SAC) – ECF No. 30 at 2.

Over the years, she railed against the denial of services to children. The CCSF did not consider expansion of services and instead decreased them. The one exception was the plaintiff's immediate supervisor, who always supported expansion of services.[6]

The plaintiff describes acts of retaliation against her. On October 1, 2018, she sent a complaint to management about the dire need for funding and staffing to remedy illiteracy and other deficiencies against youth of color. Immediately after, the plaintiff's superiors began retaliating against her for "her concern with children of color and because she was an African American." They increased her workload. They isolated her and moved her to a different unit, stripping her of her of her job duties related to education and threatening to eliminate her position. They relocated her to an "out station," doubling her commute time, and they denied her access to city vehicles for school visits. Management insisted that she tally and report her daily tasks. This was not a requirement for other workers.[7]

Other acts of retaliation included limiting her duties, reducing funding, and preventing her from attending certain meetings. Since writing the letter in 2018, the plaintiff had to work in a hostile work environment and was constantly stressed out and under duress, all because she "wanted to help children of color, mostly black children." In one instance, a panel of six supervisors and managers reprimanded the plaintiff for "encouraging an African-American foster parent to enroll a child in a reading program." Many of her co-workers were allowed to work from home during the Covid-19 pandemic, but the plaintiff was asked to work in the office. There, she was "harassed because management wrongfully accessed her medical records and based on those records denied the plaintiff FMLA. Management used the fact that plaintiff did not have a covid shot as a pretext to threaten the plaintiff with a Skelly hearing." Because they were setting her up to be terminated, the plaintiff retired. "These retaliatory actions continued from 2018 until the plaintiff couldn't take any more of the stress and negative treatment, so she took an early retirement in 2021."[8]

---

[6] *Id.* at 2–3.

[7] *Id.* at 3.

[8] *Id.*

The complaint has only facts, not claims, but presumably claims retaliation and discrimination based on the plaintiff's race and her advocacy for children of color, in violation of Title VII and FEHA. The plaintiff asks for (1) income for the period from November 1, 2021, through December 31, 2022, when other non-case-carrying Protective Services workers returned to work onsite, and (2) reinstatement of her job because she retired under duress, not according to her retirement plan.[9]

The plaintiff's initial complaint attached the EEOC determination and the right-to-sue letter and a copy of the complaint filed with the CRD.[10] In the complaint, the plaintiff alleges that she experienced (1) disability discrimination and was forced to quit, (2) retaliation for her request for a disability-related accommodation and medical leave under the Family Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and (3) disability discrimination when she was denied FMLA/CFRA medical leave.[11]

In her opposition to the defendants' motion to dismiss, the plaintiff attached the intake form that she filed with California Department of Fair Employment and Housing.[12] That form has boxes checked for a denial of an accommodation for religious beliefs, denial of employment benefits and privileges, denial of CFRA leave, denial of an accommodation for a disability, and being forced to quit and retire.[13] The demographic information reflects that the plaintiff is Black and Christian and checks the boxes for discrimination based on age, color, disability, CFRA, race, religious creed, and sex/gender.[14] The description section (denoted optional) then describes the plaintiff and her work.[15]

---

[9] *Id.* at 4.

[10] Exs. A & B to Compl. – ECF No. 1 at 11–19. The court considers these under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). They also are judicially noticeable facts not subject to reasonable dispute. Fed. R. Evid. 201(b), (d). Those facts include administrative records. *Pujol v. McDonald*, No. 16-cv-04936-SI, 2017 WL 106993, at *2 (N.D. Cal. Mar. 21, 2017). "In the context of employment discrimination [claims] in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (judicially noticing the EEOC's proceedings and findings) (collecting cases).

[11] Ex. B to Compl. – ECF No. 1 at 16–17.

[12] Opp'n – ECF No. 35 at 3 & Intake Form, Ex. A to *id.* – ECF No. 35 at 7–14.

[13] Intake Form, Ex. A to *id.* – ECF No. 35 at 9.

[14] *Id.* at 14.

[15] *Id.* at 11.

The plaintiff worked as a child-protection-services worker for twenty-six years and is 75. The work involved extensive driving and increased the plaintiff's medical problems: migraine headaches, back pain, and a cardiac event, all of which required time off. Her health improved when she became a non-case-carrying worker with fewer longer drives. Starting March 16, 2020, the work became entirely by telephone, Zoom, and other virtual platforms. She worked nine or ten hour days, with a workload that sometimes was four times her pre-pandemic load. She believes that she "endured race, and sex discrimination, as [she] was advised by a previous manager that she did not know why I was ever hired." Despite her workload, she was told that there would be "no consideration . . . to hire additional staffing for education." This was detrimental to the Black clients that she advocated for and served.[16]

She described her significant medical needs, her primary-care doctor's prescription for shorter workdays, and her ultimate agreement that she should work less (despite an earlier reluctance due to work demands and client needs). After she was assaulted at the Coliseum BART, she began trauma psychotherapy, her doctor put her on a six-hour workday, and she "received accommodations and remained on duty. Numerous coworkers . . . were approved FMLA, leaves of absence, shorter work weeks, more than once. [She was] never . . . granted extended time off proactively to take care of [her] medical problems." When her medical issues continued, her doctor prescribed three months' accommodation to work at home or be off work. She applied for a leave of absence and FMLA, and both were approved and later disapproved. HR contacted her primary-care doctor without the plaintiff's permission and convinced him that a mental-health provider should have requested leave. Her doctor then referred her to Kaiser Psychiatry, which was pending.[17]

The plaintiff contends that she was discriminated against based on her religion: her employer denied her request for a vaccine exemption based on her religion and refused to let her work from home, even though other co-workers were granted leaves of absences, FMLA, and time off for medical and personal issues. She had to work at the worksite with no regard for her age, medical

---

[16] *Id.*

[17] *Id.*

issues, and the impact on her health. She was told that her position would not be filled once she left it and believes there was always a plan to take away her duties and prevent her from advocating for the fragile Black children who comprised the "majority of the children in care. . . ." Her plea to provide more resources "has fallen on deaf ears and retaliation-type responses. My plea for help with the overload of work I struggled with as high stress and fluctuating blood pressure and declining health was exacerbated."[18]

All parties consented to magistrate-judge jurisdiction.[19] 28 U.S.C. § 636(c)(1).

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the claim needs to be plausible, and not the facts themselves. . . ." *NorthBay Healthcare Group, Inc.*, 838 F. App'x at 234 (citing Iqbal, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the

---

[18] *Id.*

[19] Consents – ECF Nos. 7, 12, 15.

factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of her claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. She need not plead specific legal theories so long as sufficient factual averments show that she may be entitled to some relief. *Id.* at 1041. If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The defendants contend that the complaint should be dismissed because (1) the plaintiff did not exhaust her administrative remedies for discrimination and retaliation based on race, and (2) she cannot state a claim against the individual defendant.[20]

---

[20] Mot. – ECF No. 31 at 4.

**1. Exhaustion**

The operative complaint claims retaliation and discrimination based on race. The agency complaints claim unlawful disability-based discrimination and retaliation. The plaintiff did not exhaust her administrative remedies for her claims predicated on race.

Title VII requires the plaintiff to comply with certain administrative procedures as a statutory precondition to suit, including by timely filing a charge with the EEOC. 42 U.S.C. § 2000e-5(b); *Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir. 2002); *Redd-Oyedelle v. Santa Clara Cnty. Office of Educ.*, No. 5:22-cv-02128-EJD, 2023 WL 2769093, at *3 (N.D. Cal. Mar. 31, 2023); *McDonald v. S.F. Unified Sch. Dist.*, No. C 07-4249 PJH, 2007 WL 3144832, at *6 (N.D. Cal. Oct. 24, 2007). Additionally, though "Title VII's claim-processing rules, while mandatory, are non-jurisdictional," *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020) (citing *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019)), a plaintiff must allege compliance with that requirement in order to state a claim. *Redd-Oyedelle*, 2023 WL 2769093, at *3. Similarly, FEHA requires exhaustion and the issuance of a right-to-sue letter. *Janvier v. City of Oakland*, 22-cv-02330-SK, 2022 WL 14813900, at *9 (N.D. Cal. Oct. 25, 2022).

The claims of retaliation and discrimination are not "like or reasonably related to" the claims of disability discrimination that were timely exhausted. *Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989).

The plaintiff nonetheless contends that she exhausted administrative remedies because she referenced race discrimination in the intake form that she filed with California Department of Fair Employment and Housing.[21] That form – summarized in the Statement — is about health issues and discrimination for failure to accommodate them. There are conclusory references to race (checking boxes and a reference to her belief about race discrimination). But this is an intake form with an optional facts section: the agency investigates the complaints that parties file. No claims of discrimination and retaliation were identified in the complaints that were investigated, the EEOC did not investigate them, and they have not been administratively exhausted. *Leong v. Potter*, 347 F.3d

---

[21] Opp'n – ECF No. 35 at 3 & Intake Form, Ex. A to *id.* – ECF No. 35 at 7–14.

117, 1122 (9th Cir. 2003) ("The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC and investigation."). When claims are based on "a different theory and a different statute" than those set forth in the complaint, there is no adequate notice to the employer of the plaintiff's claims and no exhaustion. *Id.*; *McDonald*, 2007 WL 3144832, at *6–7 (dismissing Title VII discrimination and harassment claims because the plaintiff's "EEOC charge . . . does not mention these things).

The court dismisses the existing claims with prejudice. The plaintiff may amend her complaint to claim disability discrimination.

**2. Individual Defendant**

A separate ground for dismissal of any claim against Ms. McCright is that Title VII, the Americans with Disability Act (ADA) (assuming that the plaintiff adds disability-discrimination claim), and FEHA do not provide a cause of action for damages against supervisors or fellow employees. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees.") (collecting cases); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (Congress imposed liability only on employers under Title VII and the ADEA, not individuals); *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (barring suits against individuals under the ADA); *Grimes v. San Mateo Cnty. Transit Dist.*, No. C 12-06381 LB, 2013 WL 1739470, at *6–7 (N.D. Cal. Apr. 22, 2013); *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1164 (2008) ("FEHA does not make individuals personally liable for discrimination," a holding that "applies equally to retaliation.").

Also, pro se litigants are required to comply with "all applicable procedural rules." *See, e.g.*, *Woodruff v. De Facto Barrett Daffin Frappier Treder & Weiss, LLP*, No. 21-CV-06862-SBA, 2022 WL 547114, at *2 (N.D. Cal. Jan. 10, 2022). One such rule is that the failure to oppose an argument is considered a concession of that argument. *See, e.g.*, *Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases).

The failure to oppose the motion is a ground to grant the motion. By not opposing the motion to dismiss the claims against Ms. McCright, the plaintiff has conceded the argument.

In sum, there are no viable claims against Ms. McCright.

## CONCLUSION

The court dismisses the claims with prejudice for all claims except claims against the CCSF based on disability discrimination. If the plaintiff wants to amend her complaint to add a disability-discrimination claim, she must do so by September 16, 2024.

**IT IS SO ORDERED.**

Dated: August 16, 2024

_____
LAUREL BEELER
United States Magistrate Judge